**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Wallie Gene Lang, | Civ. No. 15-1508 (DWF/BRT) |
| Petitioner, | |
| v. | **REPORT AND** |
| Department of Corrections; Tom Roy, Commissioner; and Becky Dooley, Warden, | **RECOMMENDATION** |
| Respondents. | |

---

Wallie Gene Lang, 15355 Terry Street, Thief River Falls, MN 56701, *pro se* Petitioner.

Matthew Frank, Esq., and James B. Early, Esq., Minnesota Attorney General's Office; and Scott A. Hersey, Esq., Minnesota County Attorneys Association, counsel for Respondents.

---

## I. INTRODUCTION

In April 2013, petitioner Wallie Gene Lang entered an *Alford*[1] plea in Minnesota state court to a felony charge of first-degree driving while impaired ("DWI"). Lang did so as a part of a plea deal with the prosecution and in exchange for the dismissal of additional charges against him and a mid-range guidelines sentence of sixty months imprisonment. After unsuccessfully challenging his guilty plea on direct appeal, Lang filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1,

---

[1]   A defendant entering an *Alford* plea pleads guilty and consents to the imposition of a sentence while simultaneously maintaining his innocence of the charged offense. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

Pet.) In his petition, Lang claims that his 2013 conviction and sentence for felony DWI violates both the Eighth Amendment's ban on cruel and unusual punishment and his due process rights, as the prior convictions used to enhance his current offense to a felony and to calculate his sentencing guidelines range were all "staged," "manufactured," and "counterfeit." (*Id.* at 5, 8.) Lang appears to challenge both the validity of his prior convictions and the accuracy of the court records concerning them, which he maintains were tampered with or otherwise altered. (*Id.*) Lang also claims that he was deprived of his Sixth Amendment right to a jury trial, as he was allegedly told that he could not have a trial and he did not waive that constitutional right.[2] (*Id.* at 7.) Lang not only requests that this Court overturn his 2013 DWI conviction and sentence, but that it vacate all of his prior convictions as well. (*Id.* at 15.)

The State has moved to dismiss Lang's petition on the ground that he has procedurally defaulted his constitutional claims by failing to properly raise them in state court. (Doc. No. 7, Resp't's Mot. to Dismiss; Doc. No. 8, Resp't's Mem. in Supp. of Mot. to Dismiss 13–20.) For the reasons stated below, this Court agrees that Lang has procedurally defaulted his claims for federal habeas relief, and further finds that he cannot now challenge the validity of the prior convictions used to enhance his current

---

[2]   Lang's petition, as originally drafted, also set forth claims under the Fourth Amendment and for ineffective assistance of both trial and appellate counsel. (Pet. 5–7, 10.) Lang has withdrawn his Fourth Amendment claim. (*See* Doc. No. 5, April 9, 2015 Letter.) And he has agreed to delete his claims of ineffective assistance of counsel, which remain unexhausted in state court, in lieu of having his entire habeas petition dismissed without prejudice as a mixed petition containing both exhausted and unexhausted claims. (*See* Doc. Nos. 17–18.)

DWI offense and sentence. This Court therefore recommends that Lang's petition be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

On July 7, 2012, Lang was arrested in Mahnomen County, Minnesota, after he was found lying in a roadside ditch beside a crashed motorcycle with a blood-alcohol level of .27, more than three times the state limit for operating a motor vehicle. (*See* Pet., Attach. 4 at 40, 51, 53, 61.) Lang was later charged with two felony counts of first-degree DWI, in violation of Minn. Stat. §§ 169A.20, subd. 1, and 169A.24, subd. 1(2), and one gross-misdemeanor count of driving after cancellation of his driver's license, in violation of Minn. Stat. § 171.24, subd. 5. (*Id.* at 49.) The DWI counts were charged as first-degree felonies because, according to the criminal complaint, Lang had a prior felony DWI conviction in 2005 for refusing to submit to a chemical test for the presence of alcohol.[3] (*Id.*); *see also* Minn. Stat. § 169A.24, subd. 1(2) (enhancing a DWI to a first-degree felony if the defendant has previously been convicted of a felony DWI). Lang, through his appointed public defender, reached a plea agreement with the prosecution under which he would plead guilty to a single felony DWI in exchange for the dismissal of the other charges against him and a mid-range guidelines sentence of sixty months imprisonment, with the expectation that the Minnesota Department of Corrections

---

[3]   Minnesota's DWI statute not only prohibits driving while under the influence of alcohol or a controlled substance, but also of refusing to "submit to a chemical test of the person's blood, breath, or urine . . . ." Minn. Stat. § 169A.20, subd. 2.

("DOC") would run that sentence concurrently with one of his previous sentences. (*See* Pet., Attach. 4 at 24–25.)

Lang appeared before the Mahnomen County District Court on April 4, 2013, and entered an *Alford* plea to a single felony count of first-degree DWI. (*Id.* at 25, 97.) At the plea hearing, Lang testified under oath that he understood the felony DWI charge, that it carried a maximum possible penalty of seven years in prison, and that he was effectively waiving his right to a jury trial by pleading guilty.[4] (*Id.* at 26.) He further testified that he was satisfied with his attorney's performance, was not under the influence of any drugs, alcohol, or mental disability, and that he was voluntarily entering his plea because he "want[ed] to take advantage of this deal." (*Id.* at 26–27.) Defense counsel then discussed the evidence of guilt, which Lang agreed was sufficient to support a felony DWI conviction if presented to a jury. (*Id.* at 25–27.) Counsel explained that, if the case were tried, the prosecution would present police reports, photographs, and certified court records of Lang's prior convictions, as well as testimony from paramedics that they saw Lang lying in a ditch beside a motorcycle and that his blood-alcohol level was over the legal limit. (*Id.* at 27.) Lang agreed that, based on the evidence, a jury would likely find him guilty beyond a reasonable doubt on every element of a felony DWI, including

---

[4] While Lang stated at his plea hearing that he was not relinquishing his right to a jury trial, he simultaneously expressed his understanding that he would not receive a trial if he proceeded with his guilty plea. (Pet., Attach. 4 at 26.) Indeed, a knowing and voluntary guilty plea necessarily waives a defendant's constitutional right to a jury trial. *See Parke v. Raley*, 506 U.S. 20, 29 (1992).

having a prior felony DWI conviction. (*Id.*) The judge accepted Lang's *Alford* plea, finding an adequate factual basis to support it:

> Mr. Lang, it sounds like you understand what an *Alford* [plea] is. You're not admitting that you're guilty, but it appears to me that you have a very good understanding of what the State would present if we had a trial . . . . I do agree that from what you've said here today, based upon the summary of the evidence provided by [defense counsel], that this is your choice to plead guilty and that based upon the benefit your plea is knowingly made, intelligently made, voluntarily made. You're looking for the benefit of the plea agreement.
>
> So I will accept your plea of guilt based upon what you've said here today and the summary of evidence provided by [defense counsel] and the narrative of the complaint.

(*Id.* at 28.)

In anticipation of sentencing, a presentence investigation report ("PSR") and sentencing worksheet under the state sentencing guidelines were prepared. (Pet., Attach. 4 at 55–62.) Drawing on court and police records, the PSR indicated that Lang had a lengthy criminal history, which included six gross-misdemeanor DWI convictions in Minnesota between July 1990 and June 2005; a Georgia misdemeanor DWI conviction in February 2004; gross-misdemeanor convictions in June 2005 for fleeing a police officer in a motor vehicle, obstructing process, and damaging property; and felony DWI convictions in August 2005 and March 2008 for refusing to submit to an alcohol test. (*Id.* at 57–58; *see also id.* at 1, 24, 47, 67, 74, 78–79, 103.) The PSR calculated a criminal history score of four based on Lang's two prior felony DWI convictions and his parole status at the time of his latest offense; none of his other prior convictions affected that score. (*Id.* at 54, 62.) Lang's criminal history score, when coupled with the severity level

5

of his current offense, yielded a sentencing guidelines range of fifty-one to seventy-two months imprisonment with a presumptive custodial term of sixty months. (*Id.*) The PSR noted that Lang, during his presentence interview, was "very focused on the subject of being wrongly convicted of prior DWI offenses" and was "seeking out a judicial review, as he feels his rights have been violated." (*Id.* at 61–62.)

At sentencing, which was held on May 8, 2013, Lang's attorney argued that his felony DWI conviction should be sentenced as a gross misdemeanor because he was wrongly convicted of his two prior felony DWIs. (Pet., Attach. 4 at 29.) Counsel acknowledged that Lang could not retry his prior convictions at the sentencing hearing, that the judge could "do nothing about [them] at this point," and that Lang had entered a guilty plea to a felony DWI in exchange for a sixty-month sentence. (*Id.* at 29–30.) Nevertheless, counsel maintained that Lang was merely a vehicle passenger in connection with the 2005 DWI conviction and was not even present during the 2008 DWI, that the prior DWIs used to enhance his 2005 conviction to a felony "had either been expired or discharged," and that his "due process rights ha[d] been violated throughout his prior convictions leading up to this particular case." (*Id.*) Even so, counsel conceded that Lang had pleaded guilty in 2005 to a DWI and underscored that Lang was not seeking to withdraw his *Alford* plea, but only to have his felony DWI conviction sentenced as a gross misdemeanor. (*Id.*) Lang then personally addressed the court, stating that his current felony DWI conviction was "in violation of the Eighth Amendment," both because his 2005 DWI conviction should never have been treated as a felony and the police had planted the evidence underlying the 2005 and 2008 DWI charges. (*Id.* at 32.)

Lang did not dispute, however, that he pleaded guilty to both the 2005 and 2008 DWI charges. (*Id.*) While acknowledging Lang's "issue with some of [his] prior convictions," the sentencing court emphasized that Lang had already pleaded guilty to a felony charge of first-degree DWI pursuant to a plea agreement with the prosecution and in exchange for an agreed-upon sentence of sixty months imprisonment. (*Id.* at 33.) Abiding by the terms of the parties' agreement, the court sentenced Lang to sixty months in prison followed by five years of conditional release. (*Id.*)

Lang appealed his conviction and, on September 27, 2013, his appellate attorney filed an opening brief, arguing that Lang should be allowed to withdraw his *Alford* plea because the trial court failed to carefully scrutinize its factual basis, including the accuracy of Lang's prior convictions, and independently conclude that there was evidence that would support a jury verdict for a felony DWI. (Pet., Attach. 4 at 10–23.) Appellate counsel maintained that while Lang had "accepted the fact that the record *as it existed* would likely result in a jury convicting him of the felony level offense," the trial court "did not review the conviction records to determine their accuracy." (*Id.* at 21 (emphasis in original).) At the same time, however, counsel was "unable to make any arguments as to the accuracy of [Lang's] conviction history" because he was "not privy to detailed records not submitted to the [trial] court." (*Id.* at 21 n.3.)

Lang did not file a supplementary *pro se* brief within thirty days of his appellate attorney's brief, as he was entitled to do under Minnesota law. *See* Minn. R. Crim. P. 28.02, subd. 5(17). Instead, Lang waited until November 18, 2013, after the State had filed its response, to submit a *pro se* reply brief along with a motion for acceptance of

7

that brief. (*See* Pet., Attach. 4 at 5.) According to the State's representations, which Lang does not dispute, the *pro se* reply argued in relevant part that: (1) the 2005 DWI conviction used to enhance Lang's current offense was invalid because he was merely a passenger in the vehicle; (2) all of Lang's prior conviction records had been tampered with and altered; (3) his sentence was based on an incorrect criminal history score; and (4) he was entitled to withdraw his *Alford* plea because his current DWI offense was not a felony. (Resp't's Mem. in Supp. of Mot. to Dismiss 4–5.) The Minnesota Court of Appeals, however, refused to accept Lang's *pro se* reply brief, noting that state rules did not provide for such a brief and that it was otherwise unsigned, not in a proper form, failed to contain a concise statement of the arguments, and was not confined to matters raised in the State's response, as required by Minn. R. Civ. App. P. 128.02, subd. 4. (*See id.* at 4; Pet., Attach. 4 at 96.)

Thereafter, on March 10, 2014, the Minnesota Court of Appeals rejected the single claim raised in Lang's counseled appellate brief and affirmed his conviction. *State v. Lang*, No. A13-1465, 2014 WL 902849 (Minn. Ct. App. Mar. 10, 2014). The court held that defense counsel's summary of the evidence, along with Lang's acknowledgement that the evidence was sufficient to find him guilty beyond a reasonable doubt, was enough for the trial court to "independently conclude that there was a strong probability the defendant would be found guilty." *Id.* at *2 (quotation omitted). The Minnesota Court of Appeals further held that the trial court did not err in failing to review the accuracy of Lang's prior convictions, as it was "permitted by Minn. Stat. § 609.041 (2012) to accept certified court records alone to establish proof of a prior conviction." *Id.* at *3; *see also*

8

Minn. Stat. § 609.041 ("In a criminal prosecution in which the degree of the crime or the penalty for the crime depends, in whole or in part, on proof of the existence of a prior conviction, . . . proof of it is established by competent and reliable evidence, including a certified court record of conviction.").

Lang's appellate attorney filed a petition for further review with the Minnesota Supreme Court, reiterating the single claim raised in counsel's appellate brief and addressed by the court of appeals — namely, that Lang should be allowed to withdraw his *Alford* plea to a felony DWI because the trial court failed to carefully scrutinize its factual basis. (Pet., Attach. 4 at 2–7.) The Minnesota Supreme Court denied further review on April 29, 2014. (*Id.* at 101.) Lang did not seek state collateral review of his felony DWI conviction; instead, he proceeded to file his § 2254 petition for federal habeas relief. (*See* Pet. 3, 6, 9, 15.)

### III.  DISCUSSION

In his federal habeas petition, Lang principally claims that his 2013 conviction and sixty-month sentence for felony DWI violates both the Eighth Amendment and due process guarantees because the prior offenses used to enhance that conviction and calculate that sentence were all "staged" or "manufactured." (Pet. 5, 8.) In particular, Lang maintains that the 2005 felony DWI used to enhance his current conviction is invalid, both because he had not committed a crime, but was merely a passenger in a car, and because records from the Minnesota Bureau of Criminal Apprehension ("BCA")

9

apparently show that the prior conviction was only for a gross misdemeanor.[5] (*Id.* at 5.) Lang further argues that every prior conviction listed on his sentencing worksheet was "counterfeit," having been based on court records that were tampered with or altered. (*Id.* at 5, 8.) In addition to his Eighth Amendment and due process claims, Lang alleges that he was deprived of his Sixth Amendment right to a jury trial because he did not relinquish that right and was purportedly told by his trial attorney that "they won't let me [have an] evidentiary hearing or jury trial."[6] (*Id.* at 7.) The State contends that Lang has procedurally defaulted each of his claims in state court.

A state prisoner may pursue federal habeas relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before bringing a federal claim in a § 2254 petition, however, a prisoner must first exhaust available state court remedies by fairly presenting that same claim—not merely a similar claim based on different facts or a different legal theory—in each appropriate state court, including a state supreme court with powers of discretionary review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Anderson v. Harless*, 459 U.S. 4, 6

---

[5]    Lang does not address the possibility that any error lies in the BCA's records and not the court records of his 2005 conviction, all of which indicate that he was convicted of a first-degree felony DWI for refusing to submit to an alcohol test. (*See* Pet., Attach. 4 at 1, 57, 67.) Indeed, the record shows that Lang was sentenced to a stayed term of forty-eight months in prison for that earlier offense, a sentence consistent with a felony conviction only. (*See id.* at 57, 74, 78–79, 103); Minn. Stat. § 609.02, subd. 2 (defining a felony as any "crime for which a sentence of imprisonment for more than one year may be imposed").

[6]    It is unclear from Lang's petition and subsequent filings who "they" are — the prosecutors, judge, both, or neither.

(1982); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). State prisoners must, in other words, give the state courts "a full and fair opportunity" to resolve a particular federal claim "by invoking one complete round of the State's established appellate review process," including by raising that very claim in an available petition for discretionary review in the State's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). And to afford state courts with the necessary opportunity, a state prisoner must present his claims in a procedurally appropriate manner, one that "entitles him to a ruling on the merits" of those claims. *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). If a claim is raised "in a procedural context in which its merits will not be considered," and its merits are thereby not considered, then the exhaustion requirement has not been satisfied. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

When a petitioner fails to properly exhaust his state remedies with respect to a federal claim, and state procedural rules preclude further attempts at exhaustion, the claim is procedurally defaulted. *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006). Federal courts are barred from reviewing the merits of procedurally defaulted claims unless the petitioner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To fall within the fundamental-miscarriage-of-justice exception, a petitioner must make a credible showing of actual innocence—not merely legal innocence—through new and reliable evidence. *See Schlup v. Delo*, 513 U.S. 298, 321–24 (1995); *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994).

Lang has not given the state courts a full and fair opportunity to pass on the merits of his Eighth Amendment, due process, or Sixth Amendment claims. On direct appeal, Lang's counseled brief to the Minnesota Court of Appeals and subsequent petition for review by the Minnesota Supreme Court did not "fairly present the facts and substance" of his current claims to the state courts. *See Middleton*, 455 F.3d at 855. Instead, those filings raised a single, legally distinct claim that Lang should be allowed to withdraw his *Alford* plea because the trial court allegedly failed to carefully scrutinize the factual basis for the plea and independently conclude that there were sufficient facts to support a guilty verdict for felony DWI.

Although Lang appears to have attempted to raise some of his current claims in a *pro se* reply brief, doing so did not entitle him to ruling on the merits of those claims and, consequently, the Minnesota Court of Appeals declined to address them. *See Gentry*, 175 F.3d at 1083 ("A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits."). Rather than filing a timely supplementary *pro se* brief, as he was entitled to do under state law, Lang waited until after the State filed its response to file a *pro se* reply brief, which is not specifically authorized by Minnesota law and which otherwise failed to comply with state rules. Among other things, Lang's *pro se* reply was not confined to the issues raised in his attorney's initial brief or the State's response to that brief. *See* Minn. R. Civ. App. P. 128.02, subd. 3 (providing that a reply brief "must be confined to new matter raised in the brief of the respondent"); *State v. Petersen*, 799 N.W.2d 653, 660 (Minn. Ct. App. 2011) (explaining that issues first raised in a reply

brief are waived and will not be considered on appeal). Given its procedural shortcomings, the Minnesota Court of Appeals refused to accept Lang's *pro se* reply brief and consider the merits of any of the claims raised therein. Not only did Lang fail to present his claims in a procedurally appropriate manner to the Minnesota Court of Appeals, but he did not raise those claims at all before the Minnesota Supreme Court in his petition for discretionary review. For both of these reasons, Lang has not properly exhausted his claims in state court.

Furthermore, Lang's claims are now procedurally barred under Minnesota's longstanding *Knaffla* rule, as he could have properly raised them on direct appeal but failed to do so. See *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."); Minn. Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal for the conviction or sentence."). Lang has not attempted to show that he could revive his claims in state court and this Court is satisfied that any such attempt would be fruitless. See *Powers v. State*, 731 N.W.2d 499, 502 (Minn. 2007) (holding that neither of the two exceptions to the *Knaffla* bar—"if a novel legal issue is presented" or "the interests of justice require review"—applied where the prisoner could have properly made his arguments earlier and had "not presented a colorable explanation of why he failed to do so."). Lang's claims are therefore procedurally defaulted and exempt from

federal habeas review unless he can establish either cause and prejudice or a fundamental miscarriage of justice.

In an effort to show cause for his procedural default, Lang suggests that his attorney rendered ineffective assistance of counsel by failing to raise his current claims on direct appeal. (*See* Pet. 5; Doc. No. 11 at 2.) Cause sufficient to excuse a procedural default refers to "some objective factor external" to the petitioner "that cannot fairly be attributed to him" and that "impeded [his] efforts to comply" with state procedural rules. *Coleman*, 501 U.S. at 753 (quotation omitted). Lang's attempt to establish cause falters for two independent reasons. First, as already noted, Lang was entitled to file a timely *pro se* supplementary brief asserting claims that his appellate counsel either refused or neglected to raise. Accordingly, claims that could and should have been raised on direct appeal, but which Lang failed to assert in a timely *pro se* supplementary brief, cannot be blamed solely on his appellate attorney's performance. And Lang has not identified any external factor that impeded his ability to timely file a *pro se* supplementary brief raising the claims that he is now attempting to pursue on federal habeas review. Second, a claim of ineffective assistance of counsel generally cannot serve as cause for a procedural default unless it has been exhausted as an independent claim in state court, which Lang has yet to do. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Williams v. Groose*, 77 F.3d 259, 262 (8th Cir. 1996) ("We cannot

consider ineffective assistance as cause because Williams did not exhaust an independent ineffective assistance claim in the state courts . . . .").

Lang also argues that his case involves a fundamental miscarriage of justice because his DWI conviction and sentence were improperly enhanced based on his prior criminal record. (*See* Doc. No. 11 at 2, 4; Doc. No. 15 at 2–3.) The miscarriage-of-justice exception to the procedural default doctrine, however, does not apply whenever there is an alleged constitutional violation or even a colorable claim of legal innocence. Instead, it demands a showing of factual innocence based on new and reliable evidence. *See Schlup*, 513 U.S. at 321–24; *Anderson*, 25 F.3d at 707. Lang has not shown that he did not commit a DWI on July 7, 2012 (*i.e.*, that he did not operate a motorcycle while intoxicated), let alone presented new and reliable evidence to that effect. Whether Lang's DWI offense was properly classified as a felony based on his prior criminal record involves a question of legal innocence, not of factual innocence, which does not fall within the fundamental-miscarriage-of-justice exception. *Cf. Pitts v. Norris*, 85 F.3d 348, 350–51 (8th Cir. 1996) (holding that a claim of insufficient evidence "is one of legal innocence" and, as such, cannot satisfy the miscarriage-of-justice exception). Having failed to establish either adequate cause or factual innocence, Lang has not overcome the procedural default of his Eighth Amendment, due process, and Sixth Amendment claims.

Finally, to the extent that Lang's Eighth Amendment and due process claims assert that he was wrongly convicted of the offenses used to enhance his current conviction and sentence for a felony DWI, those claims are not only procedurally defaulted, but also

15

barred by the Supreme Court's decision in *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001). In that case, the Supreme Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Lackawanna Cnty. Dist. Attorney*, 532 U.S. at 403–04 (citation omitted). While that general rule is inapplicable where the prior conviction was obtained in violation of a defendant's Sixth Amendment right to the appointment of counsel, *id.* at 404, Lang has neither alleged nor demonstrated that he was denied counsel altogether in connection with his 2005 DWI conviction or any other prior conviction used to enhance his current offense and accompanying sentence.

## CONCLUSION

In sum, this Court finds that Lang has procedurally defaulted his Eighth Amendment, Sixth Amendment, and due process challenges to his 2013 conviction and sentence for felony DWI. Furthermore, to the extent that Lang is challenging the validity of the prior convictions used to enhance his current conviction and sentence, Lang may not do so in these proceedings. Accordingly, this Court recommends that Lang's § 2254 petition be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he obtains a certificate of appealability ("COA") based on "a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c). Where, as here, a petition is rejected on procedural grounds, a petitioner seeking a COA must establish that reasonable jurists would find it debatable whether (1) the district court was correct in its procedural ruling and (2) the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons detailed above, this Court concludes that reasonable jurists would not find it debatable whether Lang has procedurally defaulted his Eighth Amendment, Sixth Amendment, and due process claims, or whether Lang's challenges to the validity of the prior convictions used to enhance his current conviction and sentence are otherwise barred by the holding of *Lackawanna*. This Court therefore recommends that Lang not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Wallie Gene Lang's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DISMISSED WITH PREJUDICE**; and

2. No certificate of appealability be granted in this matter.

Date: November 13, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **November 30, 2015**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).